OPINION
{¶ 1} The defendant-appellant, Forrest Osborn ("Forrest"), appeals the September 12, 2005, Judgment regarding the revocation of judicial release in the Court of Common Pleas of Marion County, Ohio.
 {¶ 2} On June 23, 1999, Forrest plead guilty to one count of attempted gross sexual imposition, a violation of R.C.2923.02/2907.05(A)(4), a felony of the fourth degree, and five counts of gross sexual imposition, a violation of R.C.2907.05(A)(4), a felony of the third degree. On that same day, he was sentenced to six months in prison on the attempted gross sexual imposition charge and community control on the five gross sexual imposition charges.
 {¶ 3} On September 7, 1999, Forrest was granted judicial release and transferred to the Volunteers of America Residential Treatment Program for Sex Offenders. On August 7, 2000, the Marion County Adult Probation Department filed a notice of violation stating that Forrest had violated the terms of his community control sanctions. On November 28, 2000, the trial court revoked Forrest's community control sanctions and he was sentenced to three years in prison on each of the five counts of gross sexual imposition to be served concurrently with one another. Forrest appealed this judgment and this Court affirmed the trial court's judgment in State v. Osborn (June 26, 2001), 3rd Dist. App. No. 9-2000-107.
 {¶ 4} On August 20, 2001, the trial court granted Forrest judicial release and transferred him to the Volunteers of America Residential Treatment Program for Sex Offenders. On July 28, 2005, the Marion County Adult Probation Department filed a notice of violation alleging that Forrest had violated the terms of his community control sanctions, including:
#1 I will obey all laws, on or about 06/18/05, the defendantcommitted the offense of Indecent Exposure.
 #2 I will report to my supervising probation officer wheneverI am told to do so.
 #3 I will report any contact with a law enforcement officer tomy supervising Probation Officer no later than the next businessday.
 #6 I will not leave the State of Ohio without permission ofthe Probation Department.
 #11 I will pay a $15.00 per month supervision fees on thefirst of each month to the Marion County Clerk of Courts for eachmonth that my supervision is directly maintained by the MarionCounty Adult Probation Department.
 #19 I will have no contact with juveniles under the age of 18,unless given written permission by my supervising probationofficer.
 #21 A) Has not paid court costs. B) Has not paid attorneyfees.
A violation hearing was held on August 23, 2005 and September 1, 2005. During the hearings, there was testimony establishing that Forrest left the State of Ohio on June 17-19, 2005 to attend a church event in West Virginia without permission from the probation department. While Forrest was driving one of the vehicles during the trip, one of the children, a twelve-year old girl, saw him expose his penis and urinate in a cup in the van. In addition, Forrest failed to pay his financial obligations imposed by the trial court including supervision fees of $930.00, court costs of $498.00 and attorney fees of $5,447.00.
 {¶ 5} On September 12, 2005, the trial court found probable cause to revoke the judicial release granted on August 20, 2001 and to reimpose the three year prison term. In addition, the trial court found that Forrest was not entitled to jail time credit for the time spent in the Volunteers of America Residential Treatment Program for Sex Offenders.
 {¶ 6} On October 7, 2005, Forrest filed a notice of appeal raising the following assignments of error:
 Assignment of Error 1 THE COURT VIOLATED APPELLANT'S DUE PROCESS AND EQUALPROTECTION RIGHTS BY FAILING TO INFORM HIM OF THE REASON FORREVOCATION OF HIS COMMUNITY CONTROL AND BY PERMITTING UNRELAIBLE(sic) HEARSAY.
 Assignment of Error 2 THE TRIAL COURT ERRED BY DENYING APPELLANT A REDUCTION AGAINSTHIS PRISON SENTENCE FOR TIME SPENT IN HIS RESIDENTIAL SANCTION.
 {¶ 7} In Forrest's first assignment of error, he asserts that the trial court violated his due process and equal protection rights by failing to inform him of the reason for revocation of his community control and by permitting unreliable hearsay. He argues that the trial court briefly discussed the violations during the hearing but failed to explain its reason for revocation of judicial release both at the hearing and in the judgment entry dated on September 12, 2005.
 Due Process {¶ 8} A defendant whose probation may be revoked as a result of a probation violation is entitled to due process. Gagnon v.Scarpelli (1973), 411 U.S. 778, 786, 93 S.Ct. 1756,36 L.Ed.2d 656; Morrissey v. Brewer (1972), 408 U.S. 471, 477,92 S.Ct. 2593, 33 L.Ed.2d 484. The Fourteenth Amendment to the United States Constitution prohibits the state deprivation of individual liberty without due process of law. It is well settled law that before probation can be revoked, a probationer must be granted both a preliminary and a subsequent final revocation hearing. SeeMorrissey, 408 U.S. at 477; State v. Qualls (1988),50 Ohio App.3d 56, 57, 552 N.E.2d 957.
 {¶ 9} Probationers are entitled to notice of the alleged violation of probation, an opportunity to appear and to present exculpatory evidence, a conditional right to confront adverse witnesses, an independent decision and a written report of the hearing. Gagnon v. Scarpelli, 411 U.S. at 786; see alsoMorrissey, 408 U.S. at 487. Due process requires the following in a final hearing: (a) written notice of claimed violations; (b) disclosure of evidence; (c) the opportunity to be heard in person and to present witnesses and documentary evidence; (d) right to confront and cross-examine adverse witnesses, unless a hearing officer specifically finds good cause for not allowing confrontation; (e) "neutral and detached" hearing body such as traditional parole board; (f) written statement by fact finders as to evidence relied on and reasons for revocation. Morrissey,408 U.S. at 489; State v. Delaney (1984), 11 Ohio St.3d 231,234, 465 N.E.2d 72.
 {¶ 10} The Ohio Supreme Court in State v. Delaney held that where the trial judge orally stated his findings and reasons for revoking defendant's probation, and the statement was made on the record and directed to the defendant, who was present in court, the defendant was sufficiently informed of reasons for which his probation was revoked, even though he was not given a written statement. Delaney, 11 Ohio St.3d at 235. Therefore, an oral statement made on the record by the court in lieu of a written statement is deemed sufficient to satisfy the requirement of a written statement at the final hearing.
 {¶ 11} In this case, the trial court stated in the final hearing on September 1, 2005:
All right, based on the evidence, the Court will make afinding that there have been violations of, uh, community controlsanctions. Court does — the evidence does establish that, uh, theoffense of indecent exposure was committed in this matter. Ithink the Defendant's conduct was reckless in a number of ways.
 First of all, uh, urinating while driving a car is recklessconduct. Secondly, uh, they didn't check to see that the childrenwere, in fact, asleep. They were supposed to be asleep but theynever checked to see that they were, in fact, asleep.
 Thirdly, there's no reason given at all why he simply didn'tpull over at the next gas station or convenience store and do theurination there as — as opposed to doing it in the car, or ifthey weren't close to any place, why not stop the car and go backbehind some trees to take care of the business. Uh, so there isthat violation.
 Uh, the Court finds that, uh, probation rule number 3 was notviolated as the Defendant had until 4:30 p.m. to report theviolation. Uh, Court does find that the Defendant did leave theState of Ohio without the permission of the Probation Departmentin this matter, and was adduced at the hearing was that, uh, theDefendant was advising the probation officer that he was goingwith the gospel group. There wasn't any mention of children beinginvolved there. So it wasn't a situation where the ProbationDepartment had been advised there were going to be childreninvolved in that activity. And we find that to be misleading bythe Defendant plus — plus the statement of the Defendant `whatthe Probation Department doesn't know won't hurt them' makes itpretty clear he knew he wasn't doing what he was supposed to bedoing.
 Um, Court finds that there hasn't been a payment of thesupervision fees and court costs and the attorney fees. On theother hand, there really hasn't been a lot adduced about theability to pay. The Court doesn't give that great factor at thispoint.
 Uh, finally, the Court does find that, uh, the, uh, Defendantdid have, uh, non-permitted contact with juveniles under the ageof eighteen. Uh, so the Court makes a finding of violation ofcommunity control sanctions in this matter.
* * *
Court finds that this violation's pretty significant aboutgoing out with kids without telling the Probation Department,going out of state and staying overnight. I think that's a prettydaggone serious violation considering the children in thismatter.
 I would revoke the probation, re-instate the prison sentenceof three years in this matter.
 Uh, Mr. Osborn, uh, you may be subject to a period of threeyears of post-release control by the parole board. If, aftercompleting your prison term, you violate the conditions of apost-release control sanction imposed by the parole board, theboard may impose upon you a new prison term of up to nine monthsfor each violation. However, the maximum cumulative prison termfor all violations of post-release control sanctions may notexceed one-half of your original sentence.
Sept. 1, 2005 Transcript P. 125-128.
 {¶ 12} We believe that the oral statements made by the trial court at the final hearing adequately establish the findings and reasons for revoking Forrest's probation. The oral statement made on the record by the trial court is deemed sufficient to satisfy the requirement of a written statement at the final hearing. Accordingly, we find that the trial court did not violate Forrest's due process and equal protection rights by failing to inform him of the reason for revocation of his community control.
 Unreliable Hearsay {¶ 13} In Ohio, it is well established that reliable hearsay is admissible in probation revocation hearings. State v. Hylton
(1991), 75 Ohio App.3d 778, 781-82, 600 N.E.2d 821. The Ohio Rules of Evidence do not apply to probation revocation hearings. Evid.R. 101(C)(3); State v. Cook (1998), 83 Ohio St.3d 404,425, 700 N.E.2d 570. The trial court can consider any reliable and relevant evidence indicating whether the probationer has violated the terms of his community control. Columbus v. Bickel
(1991), 77 Ohio App.3d 26, 36, 601 N.E.2d 61.
 {¶ 14} An appellate court will not reverse a trial court's decision to admit or exclude evidence absent an abuse of discretion. State v. Brownlow, 3rd Dist. No. 1-02-95, 2003-Ohio-5757, at ¶ 20, citing Wightman v. Consol. Rail Corp.
(1999), 86 Ohio St.3d 431, 437, 715 N.E.2d 546. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 15} In this case the evidence complained of consisted of the Court permitting unreliable hearsay throughout the hearing. Specifically, Forrest alleges that there was no direct testimony from any witness establishing the non-financial violations. After reviewing the record, we find that the trial court did not abuse its discretion in considering reliable and relevant evidence during the August 23, 2005 and September 1, 2005 hearings concerning whether Forrest violated the terms of his community control. Accordingly, we find that the trial court did not violate Forrest's due process and equal protection rights by permitting unreliable hearsay.
 {¶ 16} In conclusion, we find that the trial court did not violate Forrest's due process and equal protection rights by failing to inform him of the reason for revocation of his community control and by permitting unreliable hearsay. Therefore, Forrest's first assignment of error is overruled.
 Reduction of Prison Sentence {¶ 17} Forrest claims in his second assignment of error that the trial court erred by denying him a reduction against his prison sentence for time spent in his residential sanction. He argues that the trial court failed to consider the provisions of R.C. 2929.15(B) under which the court can reduce a prison term by the time the offender successfully spent under the sanction that was initially imposed.
 {¶ 18} Pursuant to R.C. 2929.15(B),
The Court may reduce the longer period of time that theoffender is required to spend under the longer sanction, the morerestrictive sanction, or a prison term imposed pursuant to thisdivision by the time the offender successfully spent under thesanction that was initially imposed. (Emphasis added.)
In addition, R.C. 2967.191 states,
The department of rehabilitation and correction shall reducethe stated prison term of a prisoner * * * * by the total numberof days that the prisoner was confined for any reason arising outof the offense for which the prisoner was convicted and sentenced* * *.
 {¶ 19} Under Ohio law there is no statutory requirement that provides that trial courts credit time spent in a rehabilitation facility against any sentence originally imposed. State v.Nagle (1986), 23 Ohio St.3d 185, 188, 492 N.E.2d 158. InNagle, the Supreme Court of Ohio held in the syllabus,
When a defendant's sentence has been suspended and he has beenplaced on conditional probation pursuant to R.C. 2951.04 andlater violates the terms of such probation, the trial court isnot required to credit time spent in a rehabilitation facilityagainst any sentence originally imposed.
The Supreme Court of Ohio stated that the preliminary inquiry must be to construe "confined" as to ascertain whether a stay in a rehabilitation center is deemed "confined." Id. at 186. InNagle, the Court stated that the "rehabilitation facility [where the appellee stayed] imposed restrictions upon appellee's freedom of action to the extent communications with family or friends were restricted or monitored. Yet, appellee's freedom of movement was not so severely restrained, i.e., he indeed did voluntarily depart the facility." Id. at 186-87. Accordingly, the Court held that "when a defendant's sentence has been suspended and he has been placed on conditional probation pursuant to R.C.2951.04 and later violates the terms of such probation, the trial court is not required to credit time spent in a rehabilitation facility against any sentence originally imposed."
 {¶ 20} In State v. Snowder (1999), 87 Ohio St.3d 335,720 N.E.2d 909, the Supreme Court of Ohio held that entry into a community based correction facility constitutes confinement (CBCF) because a CBCF is required to "`[b]e a secure facility that contains lockups and other measures sufficient to ensure the safety of the surrounding community.'" Snowder,87 Ohio St.3d at 337, citing R.C. 2301.52(A)(l). In State v. Napier (2001),93 Ohio St.3d 646, 758 N.E.2d 1127, the Supreme Court of Ohio held that time spent in a CBCF where one's ability to leave whenever he or she wishes is restricted may be construed as "confinement" pursuant to R.C. 2967.191. Furthermore, inNapier, the Court held that all time served in a CBCF constitutes confinement. Id.
 {¶ 21} Moreover, the trial court "`must review the nature of the program to determine whether the restrictions on the participants are so stringent as to constitute `confinement' as contemplated by the legislature.'" State v. Crumpton, 8th
Dist. No. 82502, 2003-Ohio-7063, at ¶ 9, citing State v.Barkus, Richland App. No. 2002 CA 0052, 2003-Ohio-1757; Statev. Fattah (Nov. 13, 2000), Butler App. No. CA2000-03-050; Statev. Hull, Marion App. No. 9-02-51, 2003-Ohio-396.
 {¶ 22} In this case, the trial court heard testimony from the Director of the Volunteers of America facility in Mansfield, Ohio at the August 23, 2005 hearing regarding the Volunteers of America program. The Court then engaged in a three page analysis of whether the Volunteers of America program constituted confinement. The trial court determined that the Volunteers of America facility in Mansfield, Ohio was a rehabilitation facility, and "not a secure facility that contained measures sufficient to ensure the safety of the surrounding community, since it does not lock the clients in the facility." Therefore, the trial court found that Forrest was "not entitled to jail credit for the time for which he was at the Volunteers of America Halfway House in Mansfield, Ohio."
 {¶ 23} We find that there is sufficient, competent, credible evidence supporting the trial court's conclusion that the Volunteers of America program was not so stringent as to constitute confinement. Accordingly, we find that the trial court did not abuse its discretion in denying Forrest a reduction against his prison sentence for time spent in the Volunteers of America program. Therefore, Forrest's second assignment of error is overruled.
 {¶ 24} For these reasons, the judgment of the Court of Common Pleas, Marion County, Ohio is affirmed.
Judgment affirmed.
 Bryant, P.J., and Cupp, J., concur.